IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Elijah Marshall, Jr., #186970,           )<br>                                                         )<br>                              Petitioner,  )<br>                                                         )<br>          vs.                                          )<br>                                                         )<br>Colie Rushton; and Attorney          )<br>General for South Carolina,            )<br>                                                         )<br>                              Respondents. )<br>                                                         ) | Civil Action No. 6:05-0345-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**FACTS PRESENTED**

The record reveals that the petitioner is currently confined in the McCormick Correctional Institution of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Richland County Clerk of Court. The Richland County Grand Jury indicted the petitioner at the September 18, 1996, term of court for burglary first degree (96-GS-40-13590) and petit larceny (96-GS-40-13591). Assistant Public Defenders Katherine Hudgins and Christa Bell represented him on these charges.

On November 7, 1996, the State gave formal written notice that it would seek a life without parole sentence for the burglary charge. On February 12-14, 1997, the petitioner received a jury trial before the Honorable John W. Kittredge. The jury convicted the petitioner of first degree burglary and petit larceny.

It was shown in his sentencing proceeding that the petitioner was convicted of armed robbery in 1976, and that he was convicted of assault and battery with intent to kill as well as an unlawful weapon charge in 1980. Judge Kittredge found that, pursuant to S.C. Code Ann. §17-25-45(c)(1) (Supp. 1977),[1] armed robbery, assault and battery with intent to kill, and first degree burglary are within the definition of a "most serious offense." He, therefore, sentenced the petitioner to life imprisonment without parole for burglary, and 30 days concurrent for larceny.

The petitioner made a motion to reconsider the sentence, which Judge Kittredge denied following a hearing on May 8, 1997. Deputy Richland County Public Defender Ross Hall represented the petitioner at the hearing. The petitioner timely served and filed a notice of appeal.

Assistant Appellate Defender Melissa J. Reed Kimbrough represented the petitioner on appeal. On April 21, 1998, the petitioner filed his final brief of appellant, in which he presented two issues for review:

> (1)   SCRCrimP (sic) Section 17-25-45 as applied in appellant's case constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States

---

[1] Subsection (A) of §17-25-45 provides that:
Notwithstanding any other provision of law, except in cases in which the death penalty is imposed, upon a conviction for a most serious offense as defined by this section, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has one or more prior convictions for:

    (1) a most serious offense; ....
Subsection (G) of §17-25-45 provides that "(t)he provisions of §17-25-45(A) shall be mandatory."

2

>Constitution and Article I, Section 15 of the South Carolina Constitution.
>
>(2)     SCRCrimP (sic) Section 17-25-45 is unconstitutional in violation of the equal protection clauses of Article I, Section III of the South Carolina Constitution and the Fourteenth Amendment to the United States Constitution.

The State filed a final brief of respondent on May 19, 1997. Senior Assistant Attorney General Charles H. Richardson represented the State on appeal. On March 10, 1999, the State Supreme Court affirmed the petitioner's convictions and sentence in an unpublished *per curiam* decision. *State v. Elijah Marshall,* 99-MO-23 (S.C. Sup. Ct., filed Mar. 10, 1999). The Supreme Court sent the remittitur to the Richland County Clerk of Court on April 1, 1999.

The petitioner filed a *pro se* post-conviction relief (PCR) application challenging his convictions and sentence on February 23, 2000. He alleged the following claims of ineffective assistance of trial counsel in his original application:

>(1)     Trial counsel for the applicant was court-appointed due to applicant's indigent status. Working with limited funds the trial attorney limited pre-trial investigation to the file of the Solicitor's Office pertaining to the crime and relying on the weak case the State had against the applicant.
>
>(2)     While performing only a cursory investigation of the facts that occurred the night the applicant was arrested, the trial attorney had minimal facts to prepare a defense. A weak defense because of lack of preparation is nothing more than no defense.
>
>(3)     Trial counsel was told of credible witnesses who could give testimony of the Applicant's whereabouts the night the crime was committed and who could testify as to the applicants' problems with drugs and alcohol and his condition on this night which would make him incapable of burglarizing any home and attempting to steal and carry off the contents thereof.
>
>(4)     Counsel failed to locate during pre-trial investigation a witness known as "Cuz" who was an initial suspect by the police and had confessed to his family, friends and the applicant that

3

he had burglarized a home on the night the applicant was charged. This was critical to the defense due to the lack of the applicant's fingerprints or any evidence gathered at the crime scene that would indicate his involvement in the crime.

The State made its return on September 24, 2000. Acting through counsel, Tara Dawn Shurling, the petitioner filed an amended application for post-conviction relief on July 26, 2001, in which he asserted three substantive issues. In addition to the two issues previously raised to and rejected by the South Carolina Supreme Court on direct appeal, he asserted that "[t]he trial judge erred in admitting the statement of petitioner (sic) when said statement was not disclosed to Defense Attorney until two (2) days before on set (sic) of trial" in violation of Rule 5, SCRCrimP.

On September 24-25, 2001, the Honorable James R. Barber, III, held a hearing into the matter at the Richland County Courthouse. The petitioner was present in court, and Ms. Shurling represented him. Assistant Attorney General David A. Spencer represented the State. The petitioner presented the testimony of trial counsel, Ms. Hudgins, and appellate counsel, Ms. Kimbrough, as well as Fifth Judicial Circuit Deputy Solicitor Jonathan S. Gasser. The State did not call any witnesses.

The petitioner again amended his allegations at the hearing and alleged that:

(1)   trial counsel was ineffective for failing to begin plea negotiations before the petitioner was indicted for offenses invoking the life without parole statute or otherwise seeking a plea bargain avoiding the application of the statute; and

(2)   appellate counsel was ineffective for not briefing the issue of late disclosure that the State would be introducing a statement by the petitioner at trial.

On December 26, 2001, Judge Barber filed an order of dismissal, in which he denied relief and dismissed the application with prejudice. The order addresses only the merits of the two allegations asserted at the PCR hearing. A timely notice of appeal was served and filed.

4

Ms. Shurling continued her representation of the petitioner in collateral appellate proceedings. On October 4, 2002, the petitioner filed a petition for writ of certiorari, in which he presented the following three issues for review by the South Carolina Supreme Court:

> (1) Was the petitioner deprived of effective assistance of counsel in the plea negotiation process?
>
> (2) With respect to prejudice, did the lower court err in ruling that there is no evidence tending to show that the petitioner would have been allowed to avoid life imprisonment without parole by pleading guilty?
>
> (3) What is the appropriate remedy under the circumstances of this case?

The State filed a return to petition for writ of certiorari on January 16, 2003. The petitioner then filed a reply to return to petition for writ of certiorari on February 7, 2003. The South Carolina Supreme Court denied certiorari in an unpublished order filed on July 24, 2003. The South Carolina Supreme Court sent the remittitur to the Richland County Clerk of Court on August 12, 2003.

In his petition now before the court, the petitioner raises the following allegations in his *pro se* petition:

> (1) Conviction obtained by violation of the protection against double jeopardy. It was a violation of my due process rights to sentence me to life without parole, without the jury hearing the evidence beyond a reasonable doubt. This also deprive[d] my right to be tried by a jury.
>
> (2) Denial of effective assistance of trial and appellate counsel.

On April 19, 2005, the respondents filed a motion for summary judgment. By order of this court filed April 21, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible

5

consequences if he failed to adequately respond to the motion. The petitioner filed his response to the motion on May 20, 2005.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, U.S.C., Section 2244(d) provides:

> (1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if

>the applicant was prevented from filing such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

When presented with an application for habeas relief, the first inquiry is to determine whether the claim raised on habeas was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d); *see Weeks v. Angelone*, 176 F.3d 249, 257 (4th Cir. 1999), *aff'd*, 120 S.Ct. 727 (2000). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C.A. §2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. §2254(d)(2); *see Williams v. Taylor*, 120 S.Ct. 1495, 1516 (2000).

If a petitioner before a federal district court fails to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and

actual prejudice as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

## **ANALYSIS**

The respondents first argue that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA). As set forth above, the one-year period generally runs from the date on which the state criminal judgment became final. *See* 28 U.S.C. §2244(d)(1)(A).

The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). The Supreme Court of South Carolina issued its opinion affirming the plaintiff's conviction on March 10, 1999. The petitioner was entitled to seek certiorari from the United States Supreme Court and, even though he did not do so, he is given the benefit of the 90-day period in which he could have sought certiorari. *Harris v. Hutchinson*, 209 F.3d 325, 327-28 (4th Cir. 2000). Accordingly, his direct appeal became final on June 8, 1999.

Accordingly, the plaintiff had one year from June 8, 1999, in which to timely file his habeas petition. However, the petitioner is entitled to have the limitations period tolled for any properly filed state PCR application. 28 U.S.C. §2244(d)(2). The petitioner's state PCR action was filed on February 23, 2000. At that point, 260 days of time not tolled by the statute had lapsed. Proceedings on the PCR application became final on August 12, 2003, when the South Carolina Supreme Court sent the remittitur to the Richland County Clerk of Court. The *Houston v. Lack*, 487 U.S. 266 (1987) delivery date for the instant petition is January 21, 2005. Therefore, the petition was filed 528 days after the PCR

8

proceedings concluded. Accordingly, unless the statute of limitation is equitably tolled, the petition is untimely.

The petitioner next argues that he is entitled to equitable tolling of the statute of limitations because he was not aware of the South Carolina Supreme Court's denial of certiorari on the PCR proceeding until January 5, 2005, when, in response to the petitioner's inquiry, the Supreme Court sent a letter to the petitioner notifying him of the denial (pet. brief, ex. 2). The respondents note that underlying the petitioner's argument is the allegation that the collateral appellate counsel was ineffective and failed to advise the petitioner of the Supreme Court's action or the statute of limitations governing federal habeas corpus petitions. In *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000), the Fourth Circuit Court of Appeals described the analysis of a claim of equitable tolling as follows:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999). The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1996) (citation omitted). But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Id.* at 330. As noted above, the delivery date of the instant petition was only 16 days after the petitioner claims he received notice. Viewing the evidence in a light most favorable to the petitioner, this court finds that the time between August 12, 2003, and January 5, 2005, should be equitably tolled. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (*per curiam*) *reh'g granted in part*, 223 F.3d 797 (5th Cir. 2000)). Accordingly, the petition is timely, and this court will examine each ground for relief.

In his first ground for relief, the petitioner contends that his conviction was obtained by "a violation of the protection against double jeopardy" (pet. at 4). The double jeopardy clause of the United States Constitution protects citizens from being twice put in jeopardy of life or liberty.[2] The prohibition against double jeopardy protects against prosecution for the same offense after acquittal or conviction and against multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 695-96 (1993). The petitioner's argument is unclear, as there does not appear to be any double jeopardy issue. In the "supporting facts" section on this ground, the petitioner states: "[I]t was violation of my due process rights to sentence me to life without parole, without the jury hearing the evidence beyond a reasonable doubt. This also deprive my right to be tried by a jury" (pet. at 4). In his "memorandum of law and support," the petitioner further states with regard to this ground:

> Moreover, defendant was denied the right to be tried by a jury. This case requires the court to apply the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490. That, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."

(Pet. brief at 9-10) (citing app. 367-68). The petitioner's trial counsel argued at sentencing that since the State was seeking life without parole pursuant to South Carolina Code §17-

---

[2]U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . .").

10

25-45, the State would have to prove to the jury that the petitioner fit within the statute, i.e. that the petitioner had the prerequisite conviction(s) to be sentenced under that statute (app. 367-68). The trial judge found that the matter was not within the province of the jury, and denied the motion (app. 368). This court has reviewed the record and it does not appear that this claim has been raised by the petitioner in his direct appeal or his state PCR proceedings.

The exhaustion requirements under §2254 are fully set forth in *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997), *cert. denied, Matthews v. Moore*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts. . . .
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.]

*Id.* at 910-11 (citations omitted from quotation).

In order to exhaust his or her claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Uniform Post Conviction Procedure Act, S.C. Code Ann. §§17-27-10 to 17-27-160. The applicant may allege constitutional violations in a post-conviction proceeding but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 495 S.E.2d 426, 428 (S.C. 1998) (citing S.C. Code Ann. § 17-27-20(a)(1), (b)); and *Simmons v. State*, 215 S.E.2d 883, 885 (S.C. 1975)). "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." *Gibson*, 495 S.E.2d at

428. The Supreme Court of South Carolina has specifically stated: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990).

Where a habeas petitioner has failed to exhaust his or her state remedies and the state court would now find his or her claims procedurally barred, further exhaustion is not required. *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). However, the federal court is precluded from hearing a procedurally defaulted claim unless the petitioner "'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice.'" *Matthews*, 105 F.3d at 916 (quoting *Coleman,* 501 U.S. at 750). This standard has been referred to as a "demanding burden." *Townes v. Murray*, 68 F.3d 840, 847 (4th Cir. 1995). Based upon the foregoing, it appears to this court that the petitioner's first ground for relief has not been exhausted and is now procedurally defaulted. Further, the petitioner has failed to make the required showing for this court to hear the procedurally defaulted claim.

The respondents interpret the petitioner's first ground for relief differently. The respondents interpret the claim to be the same as the petitioner's first ground for relief on direct appeal: that Section 17-25-45 as applied to the facts of his case constitutes cruel and unusual punishment in violation of the Eighth Amendment. The respondents argue that the South Carolina Supreme Court's denial of relief on the claim on direct appeal did not result in a decision that was contrary to or involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court (resp. brief at 11-12). In its decision denying relief, the South Carolina Supreme Court relied on authorities including the following: *Harmelin v. Michigan*, 501 U.S. 957, 957, 994-95 (1991)

("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history. . . . There can be no serious contention, then, that a sentence which is not otherwise cruel and unusual becomes so simply because it is mandatory.") and *United States v. D'Anjou*, 16 F.3d 604, 613-14 (4th Cir. 1994) (simple fact that a sentence of life without parole was imposed did not render a sentence cruel and unusual), *cert. denied*, 512 U.S. 1242 (1994). The respondents further argue that the decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, and this court agrees.[3] Under either interpretation, summary judgment is appropriate on the petitioner's first ground for relief.

In his second ground for relief, the petitioner contends he was denied effective assistance of counsel. The only such allegation that has been exhausted is the plaintiff's claim that his trial counsel was ineffective for failing to negotiate a plea. Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id*. at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Second, the petitioner must show that the deficient performance actually prejudiced him. *Id* at 694.

---

[3] At trial, the neighbor of the victim of the burglary testified that he called the police after he heard glass breaking while he was outside his house. When the police arrived, they saw a black man with his head out the window of the victim's house. He had a large object in his hand. An officer testified that the man had dreadlocks and had on a red shirt. The object was identified as a television and the window appeared to be broken (app. 112, 139, 150, 182, 205, 237). Police officers ran around the house and saw the man trying to exit the house. The man ran back inside, and officers followed him. They found the man, identified as the petitioner, in the closet with a blanket over his head (app. 206-11, 237-41). The petitioner testified at trial that a person named "Cuz" broke the window and went in the house. He further testified that he hid under the house and never entered it (app. 286-93).

According to the plaintiff's trial counsel, she spoke with the assistant solicitor assigned to the case, and he rejected any possibility of negotiations for a lesser included offense and stated that his hands were tied (app. 494-95). The PCR court found that counsel was not deficient as evidence indicated that counsel sought to negotiate out of life without parole and the prosecutor declined (app. 635). The petitioner has failed to show that his trial counsel's representation fell below an objective standard of reasonableness.

The PCR court's finding that the petitioner did not meet his burden of showing prejudice is also supported by probative evidence. It appears that the only mitigating circumstances in this case were that the petitioner was drunk at the time he broke into the victim's house and the victim was not home at the time of the break-in. While the petitioner argues that his prior convictions were remote, SCDC records indicate that he received an 18-year sentence on his assault and battery with intent to kill conviction in 1980, and he was incarcerated on and off as late as 1995 (app. 531-32). As noted by the respondents, "[t]he remoteness of the last prior offense is, therefore, hardly a compelling mitigating circumstance, as the lapse of time between his second and third most serious offenses is more a function of the duration of his incarceration than petitioner's conduct" (resp. brief 15-16). Further, the record contains no compelling evidence that a reasonable probability exists that the prosecution would be willing to enter into plea negotiations. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995) (assuming, without deciding, that counsel's failure to negotiate with the prosecutor amounted to deficient performance under *Strickland*, petitioner failed to demonstrate any prejudice: "Without showing that the prosecution was willing to enter plea negotiations with [petitioner's] counsel, or that such plea would have been acceptable to the court, or that the resulting sentence would have been different than that imposed under the Sentencing Guidelines, all that the [petitioner] urges is speculation, not a reasonable probability that the outcome would have been different. Accordingly, he cannot establish prejudice.").

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondents' motion for summary judgment be granted. Any pending nondispositive motions are held in abeyance pending the district judge's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, those motions will be rendered moot.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

November 9, 2005

Greenville, South Carolina